And our last case for argument this morning is United States v. Mark Fitzpatrick, and I believe both counsel will be on Zoom. All right. I see both counsel. Can you hear me? Yes, Your Honor. All right. Mr. Schultz, you may proceed. May it please the court, counsel for the government, Todd Schultz, assistant federal public defender representing the defendant appellant. A jury found the defendant guilty of attempted enticement of a minor in violation of 18 United States Code 2422B. On appeal, we're challenging the sufficiency of the evidence with respect to the first and the fifth elements of the offense. We're arguing there was not a sufficient basis for a rational jury to find the defendant attempted to persuade, induce, or entice. And alternatively, that there was not a sufficient basis for a jury to find the defendant was not entrapped. We're asking that this court would vacate the defendant's conviction. This case, as the court knows, involves an FBI online sting. The FBI, in this case, chose to conduct that sting on Adam for Adam, an adult-only gay pornographic dating website. They chose to pose as an adult using a screen name of Fun Boy 696969. And Mr. Schultz, we've had an opportunity to review the chat that was provided. And so just to kind of delve in here on the sufficiency element. And when Agent Ward, in that exchange, says, nice to meet you anyway, the client, your client continued and didn't close the application. And how is that not, I guess, going to the sufficiency of predisposition? So, Your Honor, with respect to the issue of predisposition, this is a website that my client went to. I don't think there's any evidence that would suggest that my client was looking to have sex with a minor. So I would suggest to this court that there is no evidence of predisposition. In fact, the overwhelming evidence is that my client was looking to have sex with an adult. Again, this is occurring on a website that is limited to adults only. He expressed a willingness to engage in consensual sex with Fun Boy when he believed him to be an adult. But doesn't he make the request after he's been put on notice that the person he believes he's engaging with is 15 years old? Your Honor, within the first 20 seconds, while Fun Boy is still representing himself to be an adult, he unsolicited tells my client that he is interested in being with a man and wishes, wants to perform oral and give oral. That is what is said to my client. But then seconds later, though, this is reproduced in your brief at the bottom of page 3 and the top of page 4. Seconds later, Fun Boy says, what about 15-year-old newbies? And there's a brief discussion. It doesn't take more than a second. He says, I can't do anything since you're 15. And then comes the moment that Judge Pryor is talking about, where Fun Boy says, I understand, though. Nice to meet you anyway. And your client comes back with a very sexual remark, which certainly seems that a rational jury, and this jury did understand, not just this, but the whole exchange, to reflect predisposition. This is not one of those cases where the judge didn't give the jury instruction. The jury spoke to this, just as our Mayfield decision indicated it usually should. And they see this perpetuated, very sexualized discussion as a sign of predisposition. The government has sort of set the table, but he's the one who came to it. So no inducement. Fair enough, Your Honor. If the court thinks, and it sounds like the court is suggesting that, in fact, that is enough basis for the jury to conclude that there was predisposition, I'd like to spend the time that I have left in my argument addressing the ordinary meaning of the words persuade, induce, entice, and coerce. Fine with me. Yeah. So, again, this conversation begins with the FBI out of the gate, indicating that, in fact, it wants to, the fun boy wants to give and receive oral to anyone. That's the reason that he is on this website. He is seeking that out. And so the question for the jury is not whether my client wanted to have sex or was willing to have sex with the minor, but rather the simple question, what element one requires is something that's actually quite different. And that is, did my client attempt to entice this minor, fun boy 69, into doing those things? And while these words are not defined in the statute, they're words of common usage, they're defined by their ordinary meaning, they're not complicated words, they're not words that, you know, you might see in a book and not know what they mean or never heard someone use in a sentence. Everybody knows what these words mean. And everybody knows that if somebody says to you, listen, I'm going to go do this, and the person responds by saying, you know what, that sounds great, I'd be willing to do that, too. No one would suggest that the person who's responding saying, yeah, I'll agree to do what you're suggesting, that that person is attempting to persuade, induce, or entice. What you have in this case is my client agreeing to what the FBI has suggested out of the gate. This whole conversation takes place in the context of the FBI saying, this is what we wanted to do. And my argument to this court is that the English language is nuanced, different words mean different things, and that the words entice, persuade, induce, and coerce are not synonymous to agreement. And so what you have in this case is you have an individual in my client who undoubtedly runs afoul of a number of state sexual criminal statutes, and perhaps some federal. But the simple question before this court is what happened here? Did he somehow persuade? And so just hypothetically speaking, from time to time, I'll get an email from the court saying, Mr. Schultz, we need to reschedule your upcoming sentencing hearing because we have a conflict. If I respond to that email and I say, you know what, that's fine, that sounds great, I'm available at the time that's suggested, would anyone say that I had persuaded the court to reset that hearing? Or that in my response I was guilty of enticing the court? What about if I responded and I said, it's fine that we're going to switch to the hearing, but I'm actually, I'm not available at the time you're suggesting, could we do it on Friday instead of Thursday? Would someone say, oh my goodness, Schultz just coerced the court to do this? Of course not, because the court had signaled to me by initiating the communication that this was what it was intending to do. And so I think very clearly what you have in this case is you have a sting that is set up to catch the wrong crime. What this sting was designed to do was to catch people who were interested, willing to meet for sex, people who were attempting to have sex with a minor. They never gave my client the opportunity to persuade that minor. There was no need to. And I would just ask this court to draw on common sense. And I think everyone knows that you only try to persuade someone if you have to. I'm here this morning because I'm trying to argue on behalf of my client. I'm here because I have to persuade the court. If the courts were to say to me, had the court sent an email to Mr. Bloodworth and me and said, you know what, we've already decided there's nothing left to say. I wouldn't take the time, your time, anyone's time to try to persuade you. And so common sense tells you that when somebody agrees to do something, which is the only evidence in this case, what then follows is not an attempt to persuade. You simply have an agreement. I'm sorry, Mr. Schultz. In this case, there was an entrapment defense given. And so what case law is there that supports your argument that assuming agent, the agent did engage in language of flattery to to attempt to get Mr. Fitzpatrick to respond, that that is enough to satisfy the entrapment. Your Honor, so with respect to with respect to my argument this morning, it seems apparent to me that the court is is not invested or does not find my argument with respect to entrapment to be meritorious. What I'm arguing before this court and asking that this court would then consider is exclusively this issue is you're talking about the statutory elements, as I understand it. The statute, which says knowingly acted with intent to persuade, induce, et cetera, et cetera. That is correct. That is one of the two grounds that we believe there was not sufficient evidence on before the jury. And so what I am saying to this court is looking at the words have meaning. What happened in this case is my client agreed to have sex with a minor at that minor's suggestion. I'm suggesting to you that the extent the English language retains any meaning that agreeing to have sex with a minor is not the same thing as persuading, enticing or inducing. And the testimony in this case was there was no need to do that. And there was none. I see that I've used the entirety of my time. Thank you. Mr. Bloodworth. Thank you. And good morning, Your Honors. Casey Bloodworth representing the United States in this matter. As the court pointed out, essentially, this this case represents basically an adult. After learning he was speaking to what he thought was a 15 year old employing repeated attempts to entice and persuade to gain the assent of the minor to engage in sexual activity. But if you look at the transcript, I certainly understand the argument Mr. Schultz is making. I mean, we have this whole thing practically even in the briefs for convenience. This statute 2422 B talks about enticement or coercion. And yet the agent who is impersonating Flyboy is seems to be driving the train. You know, he's he really seems to be the one urging Mr. Fitzpatrick to engage in sex with him after they get the ages established. Not the other way around. I don't I don't quite see it. Mr. Mr. Bloodworth, are you there? It looks like he froze up. Yeah. Mr. Bloodworth, did we lose you? The answer to that is, yes, he's definitely frozen. No one can stay best radio silence here. Let's see if we can get him back. I would certainly like to hear an answer to that question. OK. All right. All right. All right. All right. All right. All right. All right. All right. All right. OK. Mr. Bloodworth, can you hear me? Yes, I can. OK. OK. All right. I don't know if you recall. Yes. Let me repeat my question. It was in essence a request for you to answer Mr. Schultz's argument, because when one reads this lengthy transcript between the agent impersonating Flyboy and Mr. Fitzpatrick, the impression that I get is that the agent is trying to persuade Mr. Fitzpatrick to engage in sex with a 15-year-old, not the other way around. And since this statute is attempted enticement, enticement coercion, if the minor is the one pushing the activity, isn't that something outside the scope of this statute? I don't believe so, Your Honor. And I think the answer can be addressed with simply some of this court's recent findings, just as recently as found in the United States of New York. Essentially, the way I view Mr. Schultz's argument is that you can't persuade one that doesn't need any persuading. And I think what that argument requires an individual to make is that a 15-year-old, a consenting 15-year-old can't be persuaded. And generally, I think that principle has been rejected, and I think it's been rejected by this court as recently as in the United States of New York, that just because a minor is willing to engage in sex doesn't mean that that minor is willing to engage in sex with this particular person. Are you making a formalistic argument that there's an age of consent, whatever it may be in the given state, 16, 17, and if the minor is under that age of consent, we're just going to presume? Because we have a situation here on the facts of this case where the minor keeps initiating things. I wonder, what's your best evidence from this transcript showing that it's Mr. Fitzpatrick doing the persuading and not the other way around? Sure, Your Honor. I think the clearest example of the appellant's persuasion in this case comes from what it is that the minor says that he wants to try, and he's not quite sure on how to do it or whether it's something that he wants to do on a routine basis, and that's engage in homosexual activity from the outset. I think we can assume that the minor is willing to engage in sex but not quite sure how to go about doing it. So upon hearing that, I think the evidence was quite clear that Mr. Fitzpatrick then engaged in a series of communications with the 15-year-old offering, essentially to educate him on what it is. Some of the examples from government exhibit number four are, and I think this was very shortly after they started the text conversation, after learning he was 15, he says, and this is almost a direct quote, I can do you first so you know what to do. That's a clear example of persuasion, even with an individual that's willing to explore this type of sexual activity. That's a clear example of persuading or an offer or an attempt at persuading. Okay, well, let me teach you how to do it. And then from that point, he gets quite graphic in attempting to educate this minor. You know, the conversation came up, well, how do you want to do it, essentially? And the minor's like, well, to be honest, I thought there was only one way. And then Mr. Fitzpatrick engages in an incredibly graphic description of three different sexual positions, and at the end of that tells the minor, we can try all three to see what you like. So just because the minor is willing maybe to engage in sexual activity with a man, he's made clear he doesn't quite know what that sexual experience is like, and Mr. Fitzpatrick offers through persuasion and graphic conversation the ability to teach him to see if he likes it. And then following that, Mr. Fitzpatrick asks, well, is this something you want to try or is this something you want to do on a regular basis because I'm good for essentially whatever your desire is, whether a one-time event to see if you like it, and if you do like it, this can be a regular event. I think those are clear examples of persuasion, and I think that kind of helps address the question. It's kind of a combination of, yes, there's a strict statutory age for someone to engage in sex, and even with that, even someone that's willing to engage in sex, Mr. Fitzpatrick went above and beyond attempting to persuade him that he should have sex with him, not just sex with anyone in general. I hope that answers the court's question. But the attempts at persuasion go far beyond just that one example, and again, I keep bringing up York because it applies so well in this case. In U.S. v. York, this court pointed out ample evidence. I think it was characterized by this court ample evidence of persuasion, even with an individual, a 15-year-old female in that case, that was already willing to engage in sex, and that was repeated discussions of sexual activity that the defendant in that case wanted to engage in with a minor, repeated requests for photographs, sexually suggestive photographs of the minor, and then, of course, the plans to meet, which I think very clearly from the government's evidence, it was Mr. Fitzpatrick that continually requested days and times to meet this minor. I think this evidence is far more convincing than the evidence in York, and the evidence in York was certainly sufficient. With regard to entrapment, this court, I believe, hit the nail on the head. It was a very short conversation before Mr. Fitzpatrick learned that he was speaking with a 15-year-old. In very short order, Mr. Fitzpatrick, after, quite frankly, being given an out by the government to cease the conversation, not only continued the conversation, continued it in an incredibly sexually charged way, and quite frankly, it was Mr. Fitzpatrick that allowed the lines of communication to stay open by saying things such as, well, if you can't find anybody, feel free to text me or you can text me at any time in language of that nature. So I think at the end, under the standard of review that we have to look at this case, there was certainly sufficient evidence of persuasion or attempts at persuasion, and there was certainly sufficient evidence for which the jury could and did in this case, in fact, find that Mr. Fitzpatrick was not entrapped. If the court has any other questions, I'd be happy to entertain those. But short of that, the government will rest on its brief and ask the court to affirm the conviction below. Thank you, Mr. Schultz. Oh, your time had expired, but you can have an extra minute for rebuttal and you need to unmute. Sorry about that, Your Honor. I appreciate the extra minute. Just real quickly, I think it's helpful and I would ask that the court take a look at 18 U.S.C. 2425. That's another statute which criminalizes certain kind of communications with minors online. And I think what is interesting is that statute is actually broader than the enticement statute, because it outlaws communications that encourage or offer or solicit any person, any minor to engage in sexual activity, which would be a crime. And so clearly in choosing that language, Congress is saying there's something different between. And obviously, we know this from the plain, ordinary meaning of words. But what I would suggest to you is that in this case, there's no there's certainly no enticement. But even if this court thought that some of the conversation was encouragement, that that falls under a different federal statute. These words have meaning. The English language is precise. I'm just asking that this court apply the ordinary meaning and vacate this conviction. All right. Thank you very much. Our thanks to both counsel. The case is taken under advisement and that concludes the court's calendar for today. The court is in recess.